# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

LOWCOUNTRY IMMIGRATION COALITION;
MUJERES DE TRIUNFO; NUEVOS CAMINOS;
SOUTH CAROLINA VICTIM ASSISTANCE
NETWORK; SOUTH CAROLINA HISPANIC
LEADERSHIP COUNCIL; SERVICE EMPLOYEES
INTERNATIONAL UNION; SOUTHERN REGIONAL
JOINT BOARD OF WORKERS UNITED; JANE DOE
#1; JANE DOE #2; JOHN DOE #1; YAJAIRA BENET-
SMITH; KELLER BARRON; JOHN MCKENZIE; and
SANDRA JONES,

        Plaintiffs,

v.

NIKKI HALEY, in her official capacity as Governor of
the State of South Carolina; ALAN WILSON, in his
official capacity as Attorney General of the State of South
Carolina; JAMES ALTON CANNON, in his official
capacity as the Sheriff of Charleston County; and
SCARLETT A. WILSON, in her official capacity as
Solicitor of the Ninth Judicial Circuit,

        Defendants.

Civil Action File No.
2:11-cv-02779-RMG

PLAINTIFFS'
MEMORANDUM ON
SUPPLEMENTAL
AUTHORITY PURSUANT
TO LIMITED REMAND

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**………………………………………………………………ii

**INTRODUCTION**……………………………………………………………………1

**ARGUMENT**………………………………………………………………………..2

   **I.**   **Subsequent Legal Precedent Reaffirms that § 4 of Act 69 Is Preempted by Federal Law**…………………………………………………………………………………..2

   **II.**  **Sections 5 and 6(B)(2) Remain Preempted Under *Arizona*…………………………5

   **III.** **By Authorizing the Unilateral Decision to Detain Based Solely On Unlawful Presence Pending Transfer to Federal Custody, § 6 Is Preempted Under the Reasoning Set Forth in *Arizona*………………………………………………………6

   **IV.** **By Authorizing Detention During an Immigration Status Inquiry Without Any Lawful Basis, Act 69 § 6 Is Preempted Under *Arizona*…………………………11

     **A.**  **Section 6 Goes Beyond What Was Found Permissible By the Supreme Court as to SB 1070 § 2(B)………………………………………………………..11

     **B.**  **If There Is Any Ambiguity as to Whether § 6 Authorizes Unlawfully Prolonged Detention While an Immigration Status Check Occurs, the Court Should Certify the Question to the South Carolina Supreme Court………………………...14

   **V.**  **Section 6 Also Unlawfully Prolongs Detention in Violation of the Fourth Amendment………………………………………………………………………...15

   **VI.** **If the Court Lifts Its Injunction as to Any Portion of § 6, Plaintiffs Renew Their Motion for Preliminary Injunction as to § 7……………………………………18

**CONCLUSION**………………………………………………………………………20

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Johnson*, 555 U.S. 323 (2009) .................................................................... 16

*Arizona v. United States*, 132 S. Ct. 2492 (2012) ........................................................ 1

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ............................ 14, 15

*Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998) .................................................. 20

*Chamber of Commerce  v. Whiting*, 131 S. Ct. 1968 (2011) ...................................... 10

*Georgia Latino Alliance for Human Rights (GLAHR) v. Deal*, --- F.3d ---, 2012 WL 3553612 (11th Cir. Aug. 20, 2012) ........................................................................................ *passim*

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ........................................................... 5, 6, 10

*Illinois v. Caballes*, 543 U.S. 405 (2005) .................................................................. 16

*INS v. Lopez–Mendoza*, 468 U.S. 1032 (1984) ........................................................... 16

*Lehman Bros. v. Schein*, 416 U.S. 386 (1974) ............................................................ 14

*Muehler v. Mena*, 544 U.S. 93 (2005) ........................................................................ 16

*Rivas v. Martin*, 781 F. Supp. 2d 775 (N.D. Ind. 2011) ............................................ 17

*Terry v. Ohio*, 392 U.S. 1 (1968) ................................................................................ 16

*United States v. Alabama*, --- F.3d ----, 2012 WL 3553503 (11th Cir. Aug. 20, 2012) ................ 2

*United States v. Jackson*, 280 F.3d 403 (4th Cir. 2002) ............................................ 17

*United States v. Mason*, 628 F.3d 123 (4th Cir. 2010) ............................................... 16

*United States v. South Carolina*, 840 F. Supp. 2d 898 (D.S.C. 2011) .................... *passim*

*United States v. Sullivan*, 138 F.3d 126 (4th Cir. 1998) ............................................ 17

*United States v. Urrieta*, 520 F.3d 569 (6th Cir. 2008) ............................................. 17


**Statutes**

8 U.S.C. § 1103(a)(10) ................................................................................................. 8

8 U.S.C. § 1252c .......................................................................................................... 8

8 U.S.C. § 1226(a) ....................................................................................................... 9

8 U.S.C. § 1324 ..................................................................................................... 3, 4, 8

8 U.S.C. § 1327(c) ...................................................................................................... 10

8 U.S.C. § 1357 ........................................................................................................ 8, 9

S.C. App. Ct. R. 244(a) ............................................................................... 14

Sec. 4, S.C. Code § 16-9-460 ....................................................................... 2

Sec. 5, S.C. Code § 16-17-750 ..................................................................... 5

Sec. 6, S.C. Code § 17-13-170 ............................................................ *passim*

Sec. 7, S.C. Code § 23-3-1100 ..................................................................... 19

**INTRODUCTION**

The Supreme Court's decision in *Arizona v. United States*, 132 S. Ct. 2492 (2012), solidifies this Court's well-reasoned decision to preliminarily enjoin §§ 4, 5, and 6 of Act 69. *Arizona* stands for the fundamental proposition that a state cannot enact its own immigration policy—by establishing state immigration crimes or by enforcing immigration laws in a manner not contemplated by Congress. Act 69 exceeds these constitutional boundaries.

In *Arizona*, the Supreme Court struck down both state immigration crimes at issue: SB 1070 § 3, which made it a state crime to violate federal alien registration requirements, and § 5(C), which made it a state crime to seek employment without federal work authorization. 132 S. Ct. at 2503, 2505. The Supreme Court's analysis clarifies that independent state immigration crimes, such as Act 69 §§ 4, 5, and 6(B)(2), are both field and conflict preempted. In line with this Court's reasoning, the Supreme Court found such state laws to be preempted for "[p]ermitting the State to impose its own penalties for . . . federal offenses [that] conflict with the careful framework Congress adopted" and criminalizing conduct in conflict with Congress's intent. *Id*. at 2502.

Furthermore, *Arizona* directly supports this Court's decision to preliminarily enjoin Act 69 § 6. As this Court noted, § 6 impermissibly authorizes the unilateral detention of individuals solely based on immigration status during transfer to federal authorities—without a valid state law basis or regard for federal decision-making or control over immigration-based detentions. Section 6 also explicitly authorizes such detention during immigration status inquiries. *Arizona* makes it even clearer that such a state law "would disrupt the federal framework [by] put[ting] state officers in the position of holding aliens in custody for possible unlawful presence without federal direction and supervision" and "detaining individuals solely to verify their immigration

1

status would raise constitutional concerns." 132 S. Ct. at 2509. Notably, the Supreme Court also struck down SB 1070 § 6, which authorized warrantless arrests of individuals believed to be removable, again holding that unilateral state action to detain individuals on the basis of immigration status alone exceeds Congress's clear limitations on state immigration enforcement. *Id*. at 2507.

While the Supreme Court found that SB 1070 § 2(B) could be read to avoid these concerns, Act 69 § 6 cannot be so interpreted and therefore should continue to be enjoined by this Court.

**ARGUMENT**

**I.     Subsequent Legal Precedent Reaffirms that § 4 of Act 69 Is Preempted by Federal Law**

This Court correctly enjoined § 4 of Act 69, which establishes state immigration crimes for intentionally transporting or concealing, harboring, or sheltering a person who is present unlawfully, Sec. 4, S.C. Code § 16-9-460(B), (D), and makes it a criminal offense for an unlawfully present person to allow himself or herself to be "transported or moved" or to be harbored or sheltered to avoid apprehension or detection, § 16-9-460(A), (C). *See United States v. South Carolina*, 840 F. Supp. 2d 898, 916-17 (D.S.C. 2011). That ruling has since been buttressed by the Eleventh Circuit, which recently affirmed pending injunctions against analogous provisions of Georgia and Alabama law. *See Georgia Latino Alliance for Human Rights* (*GLAHR*) *v. Deal*, --- F.3d ---, 2012 WL 3553612, at *8-11 (11th Cir. Aug. 20, 2012); *United States v. Alabama*, --- F.3d ----, 2012 WL 3553503, at *9-12 (11th Cir. Aug. 20, 2012). This Court's injunction against § 4 of Act 69 is among several federal court opinions enjoining state harboring laws. These decisions are consistent with the Supreme Court's reasoning in

2

*Arizona*, which did not consider a harboring provision but strongly reaffirmed this Court's reasoning.  *See* 132 S. Ct. at 2502-06.

As the Eleventh Circuit observed, "[t]he Supreme Court's recent decision in *Arizona v. United States* provides an instructive analogy" for consideration of state harboring laws. *GLAHR*, 2012 WL 3553612, at *9.  The Eleventh Circuit concluded that "[l]ike the federal registration scheme addressed in *Arizona*, Congress has provided a 'full set of standards' to govern the unlawful transport and movement of aliens." *Id.* (quoting *Arizona*, 132 S. Ct. at 2502).  The Eleventh Circuit concluded that because the INA "comprehensively addresses criminal penalties for [harboring and transporting] . . . a state's attempt to intrude into this area is prohibited because Congress has adopted a calibrated framework." *Id.*  The same analysis holds true in this case.

Furthermore, like this Court, the *Arizona* Court held that "[f]ederal law specifies limited circumstances in which state officers may perform the functions of an immigration officer," which includes the "authority to *arrest*" for violations of the federal harboring statute, 8 U.S.C. § 1324.  132 S. Ct. at 2506 (emphasis added); *see GLAHR*, 2012 WL 3553612, at *8; *South Carolina*, 840 F. Supp. 2d at 917 ("Congress did not intend to allow the states any further role beyond arresting persons allegedly harboring or transporting unlawfully present persons . . . .").  The Supreme Court made clear that states may not exceed such specific authorizations by, for example, creating and prosecuting its own state immigration criminal scheme. *Arizona*, 132 S. Ct. at 2502 ("Even if a State may make violation of federal law a crime in some instances, it cannot do so in a field . . . that has been occupied by federal law.").  Under this analysis, § 4(A)-(D) are field preempted.

*Arizona* also supports this Court's conclusion that § 4(A)-(D) impermissibly conflict with Congress's federal statutory scheme addressing harboring and transporting. The Supreme Court held that even parallel state criminal penalties for federal immigration offenses were conflict preempted because they alter the penalties carefully calibrated by Congress. *See* 132 S. Ct. at 2502-03. Section 4 creates an irreconcilable conflict with federal law because it allows South Carolina prosecutors to add penalties on top of a federal sentence under 8 U.S.C. § 1324, increasing the penalty calibrated through the federal system pursuant to Congress's scheme. In its analysis of a similar Georgia statute, the Eleventh Circuit also recognized that the "interpretation of the [state crimes] . . . by the state courts and enforcement by state prosecutors unconstrained by federal law threaten the uniform application of the INA." *GLAHR*, 2012 WL 3553612, at *10. As this Court previously found, South Carolina's § 4 presents the same conflict by allowing South Carolina to independently decide to prosecute an individual whom the federal government has elected not to prosecute. *See South Carolina*, 840 F. Supp. 2d at 916.

The Eleventh Circuit pointed out that this conflict "is exacerbated by the inconsistency between [the state statute] . . . and provisions of federal law." *GLAHR*, 2012 WL 3553612, at *10; *see also Arizona*, 132 S. Ct. at 2503 (SB 1070 § 3 conflicts because it creates "an inconsistency between § 3 and federal law with respect to penalties"). Similarly, Act 69 § 4 presents an additional conflict because it prohibits a different and broader range of conduct than is regulated by the federal scheme. As this Court has already held, by criminalizing self-harboring and transporting, § 4(A) and (C) essentially create "the equivalent of a state crime for unlawful presence and, as such, create a conflict with federal immigration law which treats unlawful presence as a civil enforcement matter." *South Carolina*, 840 F. Supp. 2d at 925. Additionally, unlike the federal scheme, § 4 criminalizes the transportation, inducement, and

4

harboring of non-citizens into South Carolina specifically from another state.  Federal law does

not criminalize this conduct, and "such additional regulation conflicts with federal law."

*GLAHR*, 2012 WL 3553612 at *10 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1941));

*Arizona*, 132 S. Ct. at 2503.

For these reasons, this Court should incorporate the Supreme Court and Eleventh

Circuit's persuasive reasoning as support of its prior decision that § 4 (A)-(D) are both field and

conflict preempted.

## II.     Sections 5 and 6(B)(2) Remain Preempted Under *Arizona*

*Arizona* also supports this Court's injunction against attempts to impose state

immigration crimes through Act 69 §§ 5 and 6(B)(2).  Section 5 establishes a South Carolina-

specific alien registration regime by creating a new state criminal offense for failure to carry

certain immigration documents.  Sec. 5, S.C. Code § 16-17-750.  The Supreme Court held a

similar provision in Arizona's SB 1070, § 3, to be field preempted, and the same result is

required here.  "Congress intended to preclude States from 'complement[ing] the federal law, or

enforc[ing] additional or auxiliary regulations,'" in the area of alien registration.  *Arizona*, 132 S.

Ct. at 2503 (quoting *Hines*, 312 U.S. at 66-67); *see also South Carolina*, 840 F. Supp. 2d at 918

("[T]he national government has adopted a pervasive and comprehensive scheme that leaves no

place for state regulation in this area.").  The Court further held that Arizona's provision was

conflict preempted because it gave the State full prosecutorial and judicial discretion over

enforcement of these federal offenses.  *See Arizona*, 132 S. Ct. at 2502.

For the same reasons, § 6(B)(2), which criminalizes the display or possession of

fraudulent registration documents, is also preempted.  Sec. 6, S.C. Code § 17-13-170(B)(2).

Similar to SB 1070 § 3, "'[p]ermitting the State to impose its own penalties for the federal

offenses here would conflict with the careful framework Congress adopted.'" *Arizona*, 132 S.

Ct. at 2502. And critically, § 6(B)(2) would place in the hands of state actors the decision

whether to prosecute for immigration registration violations—a field the Supreme Court has now

twice found to be exclusively occupied by the federal government. *Id.*; *Hines*, 312 U.S. at 66-67;

*see also South Carolina*, 840 F. Supp. 2d at 917-18.

**III.   By Authorizing the Unilateral Decision to Detain Based Solely On Unlawful Presence Pending Transfer to Federal Custody, § 6 Is Preempted Under the Reasoning Set Forth in *Arizona***

As this Court previously held, § 6 of Act 69 authorizes the continued detention of an

individual determined to be unlawfully present while local officials determine whether to transfer

the individual to a federal facility and, if so, through transport and up until the time of actual

transfer. Specifically, § 6(C)(4) provides that "[s]tate and local law enforcement officers are

authorized to 'securely transport' a person determined to be unlawfully present in the United

States 'to a federal facility.'" *South Carolina*, 840 F. Supp. 2d at 923 (citing Sec. 6, S.C. Code §

17-13-170(C)(4)). "This action can be taken by a state or local law enforcement officer without

any independent authorization so long as the unlawfully present person is not delivered to a

federal facility outside South Carolina."[1] *Id.*; *see also id.* at 920 ("The statute authorizes the

officer to 'securely transport the person to a federal facility' without any requirement that the

federal government assent to the delivery of the person."). Thus, if an individual is found to be

unlawfully present, Act 69 authorizes state and local officials to maintain custody of the

individual solely on the basis of immigration status during transfer to a federal facility, resulting

---

[1] Notably, § 6 expressly requires "judicial authorization" for out-of-state transfers, but does not require any authorization—federal or judicial—for any transfer to an in-state federal facility. Sec. 6, S.C. Code § 17-13-170(C)(4).

in individuals being detained for long periods of time after the state-law basis for detaining them

has expired (*e.g.*, if the charges were dismissed or probable cause extinguished).[2]

This Court has held that § 6 "is subject to both field preemption and obstacle

preemption." *Id*. at 924. This holding is supported by the Supreme Court's *Arizona* decision,

which categorically rejected detentions and arrests by local officers solely for immigration

purposes outside of federal control. Under *Arizona*, § 6 fails for three reasons.

***First***, § 6 authorizes South Carolina officials under state law to detain individuals solely

for purposes of transferring them to federal authorities for removal—without any regard to

whether they have been instructed or permitted to do so by federal authorities. This state-law

authorization conflicts directly with federal immigration laws that set out the limited

circumstances under which state and local officers can enforce civil immigration laws. In

*Arizona*, the Supreme Court held that "it would disrupt the federal framework to put state

officers in the position of holding aliens in custody for possible unlawful presence without

federal direction and supervision." *Arizona*, 132 S. Ct. at 2509. Furthermore, the Supreme

Court's decision to enjoin SB 1070 § 6, which would have granted local officers the power to

make warrantless arrests and detentions of individuals suspected of being removable, is directly

on point, prohibiting the very conduct authorized under Act 69 § 6. *Id*. at 2507. In blocking this

provision, the Supreme Court emphasized that "[f]ederal law specifies limited circumstances in

---

[2] While Act 69 § 6(D) also provides that "[n]othing in this section must be construed to *require* a law enforcement officer to stop, detain, investigate, or confine a person based solely on the person's lawful presence in the United States," Sec. 6, S.C. Code § 17-13-170(D) (emphasis added), this subsection does not *prohibit* officers from detaining people based solely on suspected unlawful presence, leaving in place the authority to extend detentions in a way that the Supreme Court, as described below, has made clear would be unconstitutional. *See Arizona*, 132 S. Ct. 2506-09.

which state officers may perform the functions of an immigration officer."[3]  *Id*. at 2506; *see also id*. at 2507 ("Congress has put in place a system in which state officers may not make warrantless arrests of aliens based on possible removability except in specific, limited circumstances.").  The Supreme Court held that "the unilateral state action to detain authorized by [SB 1070] § 6 goes far beyond these measures."  *Id*. at 2507.  Section 6(C)(4) of Act 69 suffers from the same fatal flaws.  It authorizes detention by state and local police of any person who is determined to be unlawfully present, and it authorizes this detention in the absence of any federal oversight or direction.[4]  Sec. 6, S.C. Code § 17-13-170(C)(4); *see also South Carolina*, 840 F. Supp. 2d at 920, 923.

The *Arizona* decision also reaffirms the principle this Court has already noted – that 8 U.S.C. § 1357(g)(10), which authorizes "cooperation" with the Attorney General in immigration enforcement, "does not provide the State a safe harbor for Act 69."  *South Carolina*, 840 F. Supp. 2d at 923-24.  The Supreme Court reached the same conclusion, explaining that "[t]here may be some ambiguity as to what constitutes cooperation under the federal law; but no coherent understanding of the term would incorporate the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal

---

[3] According to the Supreme Court (and as previously argued by Plaintiffs here), there are four narrow circumstances in which local officers may detain individuals for immigration purposes. *Id*. at 2056 (citing 8 U.S.C. § 1357(g) (authority pursuant to formal agreements with the Attorney General)); § 1103(a)(10) (authority may be extended in the event of an "imminent mass influx of aliens off the coast of the United States"); § 1252c (authority to arrest in specific circumstances after consultation with the Federal Government); § 1324(c) (authority to arrest for bringing in and harboring certain aliens)).

[4] In fact, once a person is determined to be unlawfully present, § 6 provides that the officer may contact the State's Illegal Immigration Enforcement Unit to determine whether to maintain custody for the underlying criminal offense, demonstrating that if the decision is made to transfer the individual to federal custody the individual is no longer being held on state-law grounds. Sec. 6, S.C. Code § 17-13-170(C)(4).

Government." *Arizona*, 132 S. Ct. at 2507.  As a result, this Court's finding that "[t]he sudden delivery by South Carolina law enforcement officials to federal immigration officials of persons who do not fit the high priority federal government profile, and who may simply have encountered law enforcement officers as a result of a burned out tail light or jaywalking, would, per the United States, burden and disrupt federal immigration enforcement efforts" remains true under *Arizona*.  *South Carolina*, 840 F. Supp. 2d at 920-21.

   ***Second***, § 6(C) is preempted because it conflicts with national and foreign policy interests, namely, Congress's exclusive delegation to the Executive Branch of decisions regarding whom to detain for immigration violations.  *See Arizona*, 132 S. Ct. at 2499.  Federal law provides the Attorney General with discretion to determine whether to detain individuals for removal purposes.  *See*, *e.g.*, 8 U.S.C. § 1226(a) (allowing for, on a warrant issued by the Attorney General, the arrest and detention, or release, of a noncitizen pending a decision on whether the noncitizen is to be removed from the United States); § 1357 (establishing criteria for warrantless arrest by federal immigration officers).  Section 6 disrupts this federal framework by authorizing local officers to detain non-citizens without federal direction.  Thus, even when the federal government has elected to use its congressionally granted power to refrain from detaining an immigrant for removal, § 6 would result in the state's unilateral decision to detain.  *See* Pls.' Mem. of Law in Supp. of Mot. for Prelim. Inj. at 16, 21-23 (Doc. No. 29-1).  For example, an immigrant who is already in removal proceedings but who has been released on bond by a federal immigration judge may be detained by South Carolina officials for transfer to federal officials.  This would result in "unnecessary harassment of some aliens (for instance, a veteran, college student, or someone assisting with a criminal investigation) whom federal officials determine should not be removed."  *Arizona*, 132 S. Ct. at 2506.  Importantly, § 6 permits

officers to attempt to determine an individual's immigration status by contacting the State's Illegal Immigration Enforcement Unit, which has no federal authority to make immigration status determinations. Sec. 6, S.C. Code § 17-13-170(C)(1). Section 6 thus creates a "state authority [which] could be exercised without any input from the Federal Government about whether an arrest is warranted in a particular case," which "would allow the State to achieve its own immigration policy."[5] *Arizona*, 132 S. Ct. at 2506.

**Third**, § 6 is field preempted. As set forth above, Congress has enacted a comprehensive scheme setting forth the circumstances under which non-citizens may be detained for immigration purposes, and entrusts federal officials with discretion to determine whether a particular non-citizen should be detained. In other words, Congress has occupied the field as to immigration detention. "This area has long been under the control of the national government, and the State of South Carolina has not traditionally regulated in this area." *See South Carolina*, 840 F. Supp. 2d at 924 (citing *Chamber of Commerce v. Whiting*, 131 S. Ct. 1968, 1974 (2011)). States may not seek to trump the federal government's determinations or attempt to "complement" this scheme beyond the narrow strictures authorized by Congress. *Hines*, 312 U.S. at 66-67; *see also GLAHR*, 2012 WL 3553612 at *8-9 (finding state harboring statutes are field preempted when they overstep the narrow role Congress provided the states under 8 U.S.C. § 1327(c)). By authorizing the unilateral decision to detain an individual based on that person's

---

[5] Indeed, § 6 would "provide state officers even greater authority to arrest aliens on the basis of possible removability than Congress has given to trained federal immigration officers." *Arizona*, 132 S. Ct. at 2506. Federal officers are only permitted to "arrest an alien for being 'in the United States in violation of any [immigration] law or regulation,' for example, but only where the alien 'is likely to escape before a warrant can be obtained.'" *Id.* (quoting 8 U.S.C. § 1357(a)(2)). Whereas, § 6 authorizes the continued detention of a person without any of these substantive limitations.

immigration status and perceived removability, § 6 departs from the federal framework, and is therefore field preempted.

## IV.    By Authorizing Detention During an Immigration Status Inquiry Without Any Lawful Basis, Act 69 § 6 Is Preempted Under *Arizona*

Although the *Arizona* Court considered an immigration status verification provision, SB 1070's § 2(B), and declined to find that provision facially preempted, § 6 of Act 69 is distinguishable and this Court should maintain the injunction against it under the Supreme Court's reasoning in *Arizona v. United States.*  Unlike Arizona's § 2(B), which the Supreme Court found to be open to multiple interpretations, the text of Act 69 § 6 is clear on its face and explicitly authorizes detention of non-citizens pending an immigration status verification if a person does not have a certain type of identification, and such detention occurs without any federal control or valid state-law basis.  Sec. 6, S.C. Code § 17-13-170(A)-(C).  The Supreme Court held that "detaining individuals solely to verify their immigration status would raise constitutional concerns."  *Arizona*, 132 S. Ct. at 2509.  Because § 6 — unlike Arizona's § 2(B) — cannot "be read to avoid these concerns," it is preempted.  *Id.*

### A.    Section 6 Goes Beyond What Was Found Permissible By the Supreme Court as to SB 1070 § 2(B)

Section 6 specifies the actions an officer must take in investigating an individual suspected of unlawful presence, and authorizes detention based solely on suspected immigration status.  Like Arizona's SB 1070, if an officer develops reasonable suspicion to believe that a person is unlawfully present, Act 69 § 6 requires that the officer "make a reasonable effort, when practicable, to determine whether the person is lawfully present in the United States."  Sec. 6, S.C. Code § 17-13-170(A).  But unlike SB 1070, Act 69 § 6 lays out the steps an officer must

take in investigating immigration status, and those steps will necessarily result in prolonged detention.

Section 6 provides that "if the person meets the presumption [of lawful status by providing a specified form of identification], the officer may not further stop, detain, investigate, or arrest the person based solely on the person's lawful presence."[6]  Sec. 6, S.C. Code § 17-13-170(B)(5).  But if the person does *not* satisfy the presumption set forth in § 6(B), then the officer is required to make a reasonable effort to verify the immigration status of the individual through at least one of four methods described in § 6(C)(1)(a)-(d).  While the statute emphasizes that the person must be released immediately once found to be lawfully present, § 6(C)(3) places no such limitation on detention while the inquiry is being made.  And § 6(C) only provides that "[i]f, *after making a reasonable effort*, the officer is unable to verify the person's lawful presence in the United States by one of the methods described in [§ 6(C)(1)], the *officer may not further* stop, detain, investigate, or arrest the person based solely" on immigration status.  Sec. 6, S.C. Code § 17-13-170(C)(2) (emphasis added).  The statute therefore requires that, before releasing the person, the officer must either have determined that the individual is lawfully present or have attempted and been unable to verify the individual's lawful status.  In the meantime, the officer maintains custody.  Thus, § 6 clearly contemplates that an officer should detain a person pending the outcome of an immigration inquiry—authorizing the extension of traffic stops or other detentions without any basis other than suspicion of a civil immigration violation.[7]  *See* Pls.'

---

[6] In contrast, Arizona's § 2(B) provided no such distinction as to the release of individuals who were entitled to a presumption of lawful status versus those who were not.

[7] Act 69's legislative history further supports this interpretation.  State representative Leon Stavrinakis, for example, warned that § 6 will "add[] a second amount of time, a second block of time for the government to grab you and hold you, search you, find a reason to arrest you."  Ex. 22-L to Pls.' Mot. for Prelim. Inj., Transcript of May 24, 2011, House Debate on SB 20, 36:7-10.

Mem. of Law in Supp. of Mot. for Prelim. Inj. at 32.  Arizona's § 2(B) contains no such language.

The State has previously asserted that § 6 is saved because it provides that a person may be detained for "a reasonable amount of time as allowed by law."  Sec. 6, S.C. Code § 17-13-170(C)(2).  *See* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. at 55.  That assertion fails because Act 69 provides no guidance as to which standard officers shall use to determine what length of time is "reasonable" and because the plain language of § 6 explicitly instructs officers to release individuals being held solely for suspected immigration violations only if the individual meets the presumption of lawful status or after unsuccessfully attempting to determine an individual's status.[8]

Therefore, before an individual is even determined by local police to be present unlawfully, officers must maintain custody of certain individuals based solely on reasonable suspicion of unlawful status.  Allowing officers to decide unilaterally to detain individuals without any federal direction or lawful state basis conflicts with federal law by exceeding the clear congressional limitations on immigration enforcement and detention and by giving state officers the power to trump federal decisions as to detention of non-citizens.  *See Arizona*, 132 S. Ct. at 2506, 2499.  Like § 6(C)(4)'s grant of authority to state officers to make unilateral decisions to detain pending transfer, § 6's mandate of detention pending immigration verification

---

And he noted that the restraint of such an individual will be based only upon "a suspicion that . . . [an individual] might be here illegally or that maybe you can't prove that you're here illegally." *Id*. at 36:17-19

[8] As mentioned above, while § 6(D) provides that officers are not required to detain, investigate, or confine a person based solely on the person's lawful presence, this is belied by the clear text of the statute requiring a reasonable attempt at investigation, which will often result in prolonged detention.  And again this does not prohibit officers from having the authority to detain solely for immigration purposes.

is foreclosed by the Supreme Court and § 6 should continue to be enjoined by this Court as preempted.

**B. If There Is Any Ambiguity as to Whether § 6 Authorizes Unlawfully Prolonged Detention While an Immigration Status Check Occurs, the Court Should Certify the Question to the South Carolina Supreme Court**

As set forth above, the plain language of § 6 authorizes detentions solely for immigration purposes, contrary to the Supreme Court's admonition in *Arizona v. United States*. But if the Court finds any ambiguity about this question, Plaintiffs respectfully submit that this Court should certify the question to the South Carolina Supreme Court while maintaining the injunction to preserve the status quo. *See* S.C. App. Ct. R. 244(a) ("The Supreme Court in its discretion may answer questions of law certified to it by any federal court . . . when requested by the certifying court if there are involved in any proceeding before that court questions of law of this state which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court."). As discussed above, the text of § 6 plainly authorizes prolonged detention on the basis of immigration status alone and is distinguishable from Arizona's SB 1070 § 2(B). But Plaintiffs also recognize that the Supreme Court found that Arizona state courts had not yet provided a "definitive interpretation" of SB 1070 § 2(B)'s immigration status verification scheme, and for that reason declined to find that § 2(B) authorized prolonged detentions. *See Arizona*, 132 S. Ct. at 2510.

Certification of questions of state substantive law "save[s] time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974) (footnote omitted); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997) ("Certification procedure . . . allows a federal court faced with a novel state-law question

to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response."); *id.* at 79 ("Taking advantage of certification made available by a State may 'greatly simplif[y]' an ultimate adjudication in federal court." (alteration in original)). Thus, this Court could certify the question of whether § 6 purports to authorize unlawfully prolonged detentions during immigration status inquiries.[9]

Since the statute will be applied in an unconstitutional manner given the clear text of the law authorizing detention in the absence of a definitive interpretation to the contrary, should the Court decide to certify, Plaintiffs respectfully request that it maintain its injunction against § 6 pending the certification process.

## V. Section 6 Also Unlawfully Prolongs Detention in Violation of the Fourth Amendment

Although the Court did not reach this issue in its original decision, *Arizona* provides further support for Plaintiffs' motion for preliminary injunction as to § 6 on Fourth Amendment grounds. As explained above, § 6 requires South Carolina officers to detain individuals solely on the basis of immigration status in circumstances where officers lack probable cause to believe that a crime has been committed or even reasonable suspicion of criminal activity. This unlawful detention occurs in two circumstances: (1) pending and during transfer to a federal facility if the person is determined to be unlawfully present; and (2) during immigration verification. Section 6 authorizes both of these types of detentions without any requirement that there be a valid state-law reason for detention or any federal instruction as to whether to hold the individual. By

---

[9] If the Court opts for certification, Plaintiffs respectfully propose the following question: "Does § 6 of Act 69 authorize law enforcement officers to detain an individual, including by extending an individual's detention for any amount of time beyond the point he or she would otherwise be released from custody for state or local criminal purposes, in order to verify the individual's immigration status?"

permitting individuals to be held without an independent criminal law basis, as required by *Arizona* and its antecedents, § 6 violates the Fourth Amendment. *See* Pls.' Mem. of Law in Supp. of Mot. for Prelim. Inj. at 37-40.

The Supreme Court noted that unlawful presence alone is not a crime, explaining that "[a]s a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona*, 132 S. Ct. at 2505 (citing *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038 (1984)). Thus "[i]f the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Id*. Further, while no Fourth Amendment claim was before the Supreme Court in *Arizona*, the Court's warning that detaining individuals solely for immigration purposes "would raise constitutional concerns" was explicitly grounded in Fourth Amendment precedent. *See id.* at 2509 (citing two Fourth Amendment cases, *Arizona v. Johnson*, 555 U.S. 323, 333 (2009), and *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). And as discussed above, the state has no power to arrest or detain a non-citizen on immigration grounds, except in the limited circumstances established in the INA and not generally applicable here. *See Arizona*, 132 S. Ct. at 2506-07.

It is well established that a *Terry* stop, for example, "may not be extended beyond the time *reasonably* necessary to effectuate the stop, absent reasonable suspicion justifying further detention." *United States v. Mason*, 628 F.3d 123, 132 (4th Cir. 2010); *see also Terry v. Ohio*, 392 U.S. 1, 30 (1968). While an officer may question, on unrelated subjects, a person who has been lawfully stopped, such questioning may not prolong the stop. *See Johnson*, 555 U.S. at 333; *Muehler v. Mena*, 544 U.S. 93, 100-01 (2005). It is also well established that holding individuals in custody after they are entitled to release, or after any lawful basis for detention has expired such as when an officer has issued a citation or otherwise dealt with a traffic violation

giving rise to the stop, violates the Fourth Amendment. In such circumstances "when the purpose justifying the stop is exceeded, the detention becomes illegal unless a reasonable suspicion of some other crime exists." *United States v. Jackson*, 280 F.3d 403, 405 (4th Cir. 2002) (quoting *United States v. Sullivan*, 138 F.3d 126, 131 (4th Cir. 1998)).

Absent additional authority to hold persons beyond the original lawful state basis, such as reasonable suspicion of a *crime*, Defendants cannot prolong the detention of confined individuals. And as set forth above, suspicion of unlawful immigration status is not a valid basis to continue custody because it is not a crime. *See United States v. Urrieta*, 520 F.3d 569, 578 (6th Cir. 2008) ("Under the Fourth Amendment, even the briefest of detentions is too long if the police lack a reasonable suspicion of specific criminal activity."); *Rivas v. Martin*, 781 F. Supp. 2d 775, 778-80 (N.D. Ind. 2011) (denying motion to dismiss where plaintiff was detained solely on basis of immigration hold).

In order to carry out § 6's mandate, local law enforcement officers are authorized to prolong the detention of the individual despite lacking any suspicion of criminal activity to lawfully extend the original stop. Before releasing a person who is suspected of unlawful presence and unable to meet the presumption of lawful status, the officer must attempt and be unable to verify the individual's lawful status. Sec. 6, S.C. Code § 17-13-170(C)(2). And if a person is determined to be unlawfully present, § 6 provides that the officer hold the person for purposes of transport to a federal facility. § 17-13-170(C)(4). Thus, officers will be continuing custody of individuals who would otherwise be released from custody (because, for example, charges against them were dismissed or they were only issued a citation or a warning), without any lawful basis other than a federal civil immigration violation. *See* Decl. of Sheriff Leon Lott ¶ 5 (Attach. 8 to USA Mot. for Prelim. Inj. (Doc. No. 16-9)) ("In such cases, my deputies will be

required to detain the target of the stop pending confirmation of the individual's immigration status."). Thus, Act 69 § 6 should also be enjoined on Fourth Amendment grounds.

## VI.    If the Court Lifts Its Injunction as to Any Portion of § 6, Plaintiffs Renew Their Motion for Preliminary Injunction as to § 7

Section 7 suffers from the same constitutional defects as § 6. This Court previously found that

> Section 7 requires the verification of the immigration status of any person incarcerated or detained in a jail facility and provides for potential delivery of incarcerated persons to federal facilities if they are determined to be unlawfully present in the United States. Initially, Section 7 appears to expose several of the private plaintiffs to a potential injury that is concrete and particularized since the operation of Sections 4, 5 and 6 of the Act may result in one or more private plaintiffs being arrested and detained at a local or state prison facility.

*South Carolina*, 840 F. Supp. 2d at 908. However, the Court held that "the injury which private plaintiffs could potentially suffer as the result of § 7 is primarily dependent upon the implementation of §§ 4, 5 and 6 of the Act," and as a result found that Plaintiffs lacked standing to challenge that provision.[10] *Id.* If the Court lifts its injunction as to any portion of § 6,

---

[10] Additionally, the organizational Plaintiffs have standing to challenge § 7. For example, Plaintiff organizations, such as Mujeres de Triunfo, Nuevos Caminos, and SCVAN, have members who lack qualifying documents under Act 69 that would establish a presumption of lawful presence and thus face the same credible threat of arrest and incarceration. *See* McCandless Decl. at ¶¶ 4, 6 (Ex. 12 to Pls.' Mot. for Prelim. Inj.); Robinson Decl. at ¶¶ 4, 7, 12, 13 (Ex. 13); Swain Kunz Decl. at ¶¶ 5, 8 (Ex. 14). Further, the organizational Plaintiffs will suffer irreparable harm because they must divert organizational resources away from core mission activities to address their members', clients', and patrons' concerns about the law and repercussions from its enforcement. *See* Kanuck Decl. ¶¶ 8, 11-13, 15 (Ex. 11) (instead of sponsoring workshops on small business and investments, the Lowcounty Immigration Coalition is "holding multiple 'Know Your Rights' presentations to inform [Latino immigrants] about their rights"); McCandless Decl. ¶¶ 11-14 ("Rather than focusing on support and information for women who have experience trauma, our limited resources have been re-directed to responding to members' fears and concerns surrounding SB 20's impact on their lives."); Robinson Decl. ¶¶ 8-9; Swain Kunz Decl. ¶¶ 11, 15-17; Torrales Decl. ¶ 6 (Ex. 15); Raynor Decl. ¶ 11 (Ex. 17). And the missions of the organizational Plaintiffs have been and will continue to be frustrated due to diminished membership and clients. Their members are afraid to gather in public places,

Plaintiffs request reconsideration of the Court's decision as to Plaintiffs' standing with regards to § 7.

Like § 6, § 7 authorizes the continued detention of an individual after lawful state custody has expired (*e.g.*, if charges are dropped or sentence has been completed) on the basis of immigration status alone. Sec. 7, S.C. Code § 23-3-1100(E). Section 7 could not be clearer—"if a prisoner who is an alien unlawfully present in the United States *completes* the prisoner's sentence of incarceration, the keeper of the jail . . . *shall securely transfer* the prisoner to a federal facility." *Id.* (emphasis added); *see also* § 23-3-1100(D) (Officers "may securely transport the prisoner who is an alien unlawfully present in the United States to a federal facility in this State."). As Defendants concede, § 7 "allows for continued detention of only 'unlawfully present' aliens and only for purposes of transferring them to Federal custody." Defs.' Opp'n to Pls.' Mot. For Prelim. Inj. at 37.

Section 7 conflicts with federal law just as § 6 does—by far exceeding the narrow role that Congress has conferred on local officers to enforce immigration law by allowing for unilateral decisions to detain individuals on the basis of immigration status alone. For example, under federal enforcement guidelines, ICE may decide not to proceed against an undocumented immigrant who has been arrested for a low-level offense, such as driving without a license, and has no other criminal history. *See* Pls.' Mem. of Law in Supp. of Mot. for Prelim. Inj. at 31-32 (citing ICE memoranda on prosecutorial discretion). Yet, under § 7 that person will be held in custody after he would normally be released and transferred to ICE, regardless of whether ICE

---

attend meetings, and engage in other service, advocacy and organizing activities that might bring them into contact with law enforcement. *See* Kanuck Decl. ¶¶ 13-14; McCandless Decl. ¶¶ 11-14; Swain Kunz Decl. ¶ 17; Torrales Decl. ¶ 7; Robinson Decl. ¶¶ 7, 9, 11, 13; Baird Decl. ¶ 10 (Ex. 16); Raynor Decl. ¶¶ 6, 8-10.

desires to take any action.  South Carolina cannot lawfully create its own detention scheme that mandates local agencies to maintain custody for transfer to federal custody, without regard to whether the federal government has authorized such detention.

And, as discussed above, holding individuals beyond their sentence or when they otherwise should be released from state custody only for federal civil immigration violations and without any direction from the federal government also constitutes an unlawful detention under the Fourth Amendment.  *See Armstrong v. Squadrito*, 152 F.3d 564, 578 (7th Cir. 1998) ("In a constitutional sense, how much more basic could it get – jails cannot confine people without authority to do so.").

## CONCLUSION

For the reasons set forth above, the Court should maintain its injunction as to §§ 4-6 of Act 69 under the Supreme Court's decision in *Arizona v. United States*.  And, if the Court decides to lift its injunction as to any portion of § 6, it should reconsider Plaintiffs' standing with regards to § 7.

Respectfully submitted,

s/ Susan K. Dunn_____
Susan K. Dunn (Federal Bar No. 647)
American Civil Liberties Union of
South Carolina
P. O. Box 20998
Charleston, South Carolina 29413-0998
T: (843) 720-1425
*sdunn@aclusouthcarolina.org*

*On behalf of Attorneys for Plaintiffs*

Susan K. Dunn (Federal Bar No. 647)
American Civil Liberties Union of
South Carolina
P. O. Box 20998
Charleston, South Carolina 29413-0998
T: (843) 720-1425
*sdunn@aclusouthcarolina.org*


Stephen Suggs (Federal Bar No. 7525)[+]
SOUTH CAROLINA APPLESEED
LEGAL JUSTICE CENTER
P.O. Box 7187
Columbia, South Carolina 29202
T: (803) 779-1113
*ssuggs@scjustice.org*


Andre Segura (Appearing *pro hac vice*)
Omar C. Jadwat (Appearing *pro hac vice*)
Courtney Bowie (Appearing *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
T: (212) 549-2660
*asegura@aclu.org*
*ojadwat@aclu.org*
*cbowie@aclu.org*


Michelle R. Lapointe
(Appearing *pro hac vice*)
Naomi Tsu (Appearing *pro hac vice*)
Daniel Werner (Appearing *pro hac vice*)
SOUTHERN POVERTY LAW CENTER
233 Peachtree St., NE, Suite 2150
Atlanta, Georgia  30303
T: (404) 521-6700
*michelle.lapointe@splcenter.org*
*naomi.tsu@splcenter.org*
*daniel.werner@splcenter.org*

Reginald Lloyd (Federal Bar No. 6052)
LLOYD LAW FIRM
One Law Place, 223 East Main Street Suite
500
Rock Hill, South Carolina 29730
T: (803) 909-8707
*reggie@lloydlawfirm.net*


Alice Paylor (Federal Bar No. 3017)
ROSEN, ROSEN & HAGOOD
151 Meeting Street, Suite 400
Charleston, South Carolina 29401
T: (843) 577-6726
*apaylor@rrhlawfirm.com*


Linton Joaquin (Appearing *pro hac vice*)
Karen C. Tumlin (Appearing *pro hac vice*)
Nora A. Preciado (Appearing *pro hac vice*)
Melissa S. Keaney (Appearing *pro hac vice*)
Alvaro Huerta (Appearing *pro hac vice*)
NATIONAL IMMIGRATION LAW
CENTER
3435 Wilshire Boulevard, Suite 2850
Los Angeles, California 90010
T: (213) 639-3900
*joaquin@nilc.org*
*tumlin@nilc.org*
*preciado@nilc.org*
*keaney@nilc.org*
*huerta@nilc.org*


Victor Viramontes (Appearing *pro hac vice*)
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
634 S. Spring Street, 11th Floor
Los Angeles, California 90014
T: (213) 629-2512 x 133
*vviramontes@maldef.org*

Katherine Desormeau
(Appearing *pro hac vice)*
Cecilia D. Wang
(Appearing *pro hac vice)*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION IMMIGRANTS'
RIGHTS PROJECT
39 Drumm Street
San Francisco, California 94111
T: (415) 343-0775
*kdesormeau@aclu.org*
*cwang@aclu.org*

Mary Bauer (Appearing *pro hac vice)*
Samuel Brooke (Appearing *pro hac vice)*
SOUTHERN POVERTY LAW CENTER
400 Washington Ave.
Montgomery, Alabama 36104
T: (334) 956-8200
*mary.bauer@splcenter.org*
*samuel.brooke@splcenter.org*

Foster S. Maer (Appearing *pro hac vice*)
Ghita Schwarz (Appearing *pro hac vice*)
Diana S. Sen (Appearing *pro hac vice*)
LATINOJUSTICE PRLDEF
99 Hudson St., 14th Floor
New York, New York 10013
T: (212) 219-3360
*fmaer@latinojustice.org*
*gschwarz@latinojustice.org*
*dsen@latinojustice.org*

Amy Pedersen (Appearing *pro hac vice*)
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
1016 16th Street NW, Suite 100
Washington, DC 20036
T: (202) 293-2828 x 12
*apedersen@maldef.org*

Justin B. Cox (Appearing *pro hac vice*)
(admitted in DC & MD)
ACLU Immigrants' Rights Project
230 Peachtree Street, NW, Suite 1440
Atlanta, GA 30303-2721
T: (404) 523-2721, ext. 215
*jcox@aclu.org*

[+] Attorney only for Plaintiffs Lowcountry Immigration Coalition, SCVAN, Mujeres de Triunfo, and Nuevos Caminos