IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Civil Action No. 2:11-cv-02958-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| State of South Carolina, and | ) | |
| Nikki R. Haley, in her official | ) | |
| capacity as the Governor of | ) | |
| South Carolina, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Lowcountry Immigration Coalition, et al, | ) | Civil Action No. 2:11-cv-02779 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS' RESPONSE** |
| | ) | **TO MEMORANDA OF PLAINTIFFS** |
| Nikki Haley, et al, | ) | **ON LIMITED REMAND** |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Defendants Governor Haley, Attorney General Wilson and State of South Carolina respond as follows to the memoranda of Plaintiffs United States and Lowcountry Immigration Coalition, *et al* as to provisions of South Carolina law that should be modified as a result of *Arizona v. United States*, 567 U.S. ___, 132 S. Ct. 2492 (2012):

1

## ARGUMENT

## I

## THE UNITED STATES AGREES THAT THIS COURT SHOULD LIFT THE PRELIMINARY INJUNCTION OF SECTION 6 OF ACT 61 REGARDING PRODUCTION OF IDENTIFICATION, AND LOWCOUNTRY OFFERS NO VALID REASON TO MAINTAIN THE INJUNCTION

*Arizona* reversed the granting of preliminary injunction of an Arizona statute very similar to Act 69, §6 regarding determination of whether a person is lawfully present in the United States. The same action should be taken as to §6 which offers even stronger limits than the Arizona law. The United States, which challenged this provision in its suit, agrees. Only the Lowcountry Plaintiffs are out of step with *Arizona* as to that section.

### A

### The United States Agrees that the Injunction may be Lifted as to This Part of the Act

The United States concedes that "[t]he Court's approach in *Arizona* applies to that portion of Section 6 of South Carolina's Act 69 that requires immigration status verification . . . [and that] a preliminary injunction against this provision on preemption grounds is not required at this time. . . ." Memorandum at p. 13. Although the United States believes that "further review may be necessary depending upon how the provision is actually applied in practice and construed by the South Carolina courts" (*Id.*), that "further review", which the Defendants believe will be unnecessary, is not an issue to be addressed as to the preliminary injunction.

## B

**The Lowcountry Plaintiffs provide no basis for maintaining the Preliminary Injunction**

These Plaintiffs attempt to sidestep *Arizona* or apply it in ways that are inconsistent with that decision and a reasonable reading of section 6. These efforts are examined below.

### 1

**Section 6 (C) Does Not Permit Unauthorized Drop-offs of Unlawfully Present Persons and Lowcountry's arguments are foreclosed at this stage**

Lowcountry complains that §6(C) (S.C. Code Ann. § 17-13-170) authorizes South Carolina officials to detain individuals for purposes of transferring them to federal authorities for removal regardless of whether they have been instructed or permitted to do so by federal authorities. They appear to be directing their argument to the following provision of §6(C):

> (4) If the officer determines that the person is unlawfully present in the United States, the officer shall determine in cooperation with the Illegal Immigration Enforcement Unit within the South Carolina Department of Public Safety [DPS] or the United States Immigration and Customs Enforcement [ICE], as applicable, whether the officer shall retain custody of the person for the underlying criminal offense for which the person was stopped, detained, investigated, or arrested, or whether the Illegal Immigration Enforcement Unit within the South Carolina Department of Public Safety or the United States Immigration and Customs Enforcement, as applicable, shall assume custody of the person. The officer is not required by this section to retain custody of the person based solely on the person's lawful presence in the United States. The officer may securely transport the person to a federal facility in this State or to any other point of transfer into federal custody that is outside of the officer's jurisdiction. . . .

Certainly, this provision would not permit an unauthorized drop off of the alien at a Federal facility that did not want to take custody. It expressly states that the decision to transfer custody is to be made in cooperation with ICE or the DPS enforcement unit. The cooperation provision would bar an unauthorized drop-off.

Arizona's statute contains a somewhat similar provision for custody transfer to federal

facilities that does not even stress cooperation as does the South Carolina statute.[1] The scope of Arizona transfer provisions was not even discussed by the Supreme Court and with good reason in that it is entirely consistent with the Opinion of the Supreme Court. When *Arizona* overturned the injunction of the Arizona statute containing the custody transfer provisions, the injunction should be lifted as to §6(C) in South Carolina, also.

Georgia has a similar custody transfer provision[2] and the Eleventh Circuit refused to enjoin it post-*Arizona*. *Georgia Latino Alliance for Human Rights v. Governor of Georgia,* 691 F.3d 1250 (11th Cir. 2012*).* In particular, the Court noted that "at oral argument, counsel for the State of Georgia emphasized that [Georgia] section 8 authorizes arrest and detention only to the extent permitted by federal law [and the Court found that] [t]his interpretation is consistent with the plain language of O.C.G.A. § 17–5–100(e)." *Id.* Under South Carolina's similar provision, the custody would have to be consistent with federal law as in Georgia.

The Eleventh Circuit, also rejected the pre-enforcement challenge to similar provisions in

---

[1] A.R.S. § 11-1051 D:
> Notwithstanding any other law, a law enforcement agency may securely transport an alien who the agency has received verification is unlawfully present in the United States and who is in the agency's custody to a federal facility in this state or to any other point of transfer into federal custody that is outside the jurisdiction of the law enforcement agency. A law enforcement agency shall obtain judicial authorization before securely transporting an alien who is unlawfully present in the United States to a point of transfer that is outside of this state.

[2] Ga. Code Ann., § 17-5-100 (e):

> If during the course of the investigation into such suspect's identity, a peace officer receives verification that such suspect is an illegal alien, <u>then such peace officer may take any action authorized by state and federal law, including, but not limited to, detaining such suspected illegal alien, securely transporting such suspect to any authorized federal or state detention facility</u>, or notifying the United States Department of Homeland Security or successor agency. Nothing in this Code section shall be construed to hinder or prevent a peace officer or law enforcement agency from arresting or detaining any criminal suspect on other criminal charges. (emphasis added).

4

Alabama law[3] as follows:

> Like the relevant Arizona provision, we are compelled to conclude that this preenforcement challenge to section 12(a) cannot succeed. As the Court confirmed in *Arizona*, it is not problematic to request information explicitly contemplated by federal law. *See Arizona*, 132 S.Ct. at 2508. While we do not foreclose any future challenge to the scope of detention eventually authorized or permitted under section 12(a), at this point we cannot conclude that the state statute "will be construed in a way that creates a conflict with federal law." *Id.* at 2510. As a result, we reject the preenforcement challenge that section 12(a) is preempted by federal law.

*United States v. Alabama*, 691 F.3d 1269, 1284 (11th Cir. 2012). The decision quoted the above paragraph from *GLAHR*.

Not only is Lowcountry's argument lacking in substantive merit, *Arizona* also makes clear that this pre-enforcement challenge to §6 is premature. *Valle del Sol v. Whiting*, CV 10-1061-PHX-SRB (DCAZ, September 5, 2012) stated that the District Court would "not ignore the clear direction in the *Arizona* opinion that [Arizona] Subsection 2(B) cannot be challenged further on its face before the law takes effect." Issues regarding transfer of custody under the South Carolina statute are resolved by a reasonable construction of the statute as noted above, and would go to an as applied challenge rather than the facial challenge we have here.

---

[3] AL HB 56§ 12(e) provides that "[i]f an alien is determined by the federal government to be an alien who is unlawfully present in the United States pursuant to 8 U.S.C. § 1373(c), the law enforcement agency shall cooperate in the transfer of the alien to the custody of the federal government, if the federal government so requests."

Although this Alabama provision expressly conditions transfer upon a request of the federal government, the only reasonable construction of South Carolina's §6 is that it would not authorize the drop-off of an alien at a Federal facility that did not want to take custody.

5

**2**

**Lowcountry's arguments regarding policy conflict, field preemption and Fourth Amendment are foreclosed at this stage by *Arizona* and the posture of this case**

Lowcountry strays from the scope of the limited remand order in several respects by bringing up issues that were not addressed in *Arizona* as to the provisions comparable to §6 and that are foreclosed from consideration at this stage by that decision, including national and foreign policy conflict, field pre-emption, and the Fourth Amendment[4]. *Valle del Sol v. Whiting, supra,* refused to reach the challenges to the Arizona law on the grounds of the Fourth Amendment and Equal Protection because *Arizona* foreclosed such challenges at this stage. Accordingly, *Arizona* forecloses Plaintiffs from proceeding further on their facial challenge to §6, and under that decision and its progeny, and therefore, the injunction should be lifted as to §6.

**3**

**Any detention resulting from the verification process under §6 is consistent with *Arizona***

Lowcountry again departs from *Arizona*'s foreclosure of pre-enforcement facial challenges to the Arizona statute comparable to section 6 by making strained arguments that the express limitation on detentions to "a reasonable amount of time as allowed by law" fails to provide sufficient guidance. §6(C)(2)(§17-13-170(C)(2)). The Supreme Court rejected the similar argument "that, in practice [under Arizona law], state officers will be required to delay the release of some detainees for no reason other than to verify their immigration status." 132 S.

---

[4] As Lowcountry recognizes, this Court did not enjoin §6 on the basis of the Fourth Amendment previously, and *Arizona* did not address the Fourth Amendment. Therefore, Lowcountry's request goes beyond the scope of the limited remand in this case which is for the purpose of addressing only whether "any portion of the Court's preliminary injunction order should be modified as a result of *Arizona*. . . ." If, *arguendo,* the Court wishes to consider the Fourth Amendment argument, the Defendants crave reference to their memorandum in opposition to the preliminary injunction motion and request the opportunity for further briefing on this issue.

Ct. at 2509. The Court concluded that "[a]t [that] stage, without the benefit of a definitive interpretation from the state courts, it would be inappropriate to assume [Arizona] § 2(B) will be construed in a way that creates a conflict with federal law. Similarly, Lowcountry's speculative concerns about the construction and application of §6[5] are foreclosed at this stage by *Arizona's* refusal to assume that the statute would be construed in a way that would conflict with federal law.

4

**Issues Regarding Detention Do Not Need to be Certified**

Now, after requesting limited remand to the District Court, the Lowcountry Plaintiffs go a step further, for the first time, and request certification to the South Carolina Supreme Court of the question of "whether §6 purports to authorize unlawfully prolonged detentions during immigration status inquiries." Plaintiffs' Memorandum at p. 15. Certification is not necessary now for the reasons noted in Defendants' Opening Memorandum:

> Because of the express provisions in South Carolina's statute for detention only for "a reasonable amount of time as allowed by law," South Carolina's statute lacks the "basic uncertainty about what the law means and how it will be enforced" which the Supreme Court found in the Arizona statute. *Arizona*, 132 S. Ct. 2510. *See also, infra,* note 2. Nevertheless, the State reserves the right, in the instant case, to seek certification to the South Carolina Supreme Court of any questions of statutory interpretation should such interpretation be necessary at a later stage of this proceeding.

---

[5] These foreclosed speculations include Lowcountry's baseless argument that provisions of §6 for immediate release upon determination of presumptive lawful status allows for prolonged detention when a person fails to qualify for presumptive lawful presence. (§6(B)(5) - "If the person meets the presumption established pursuant to this subsection, the officer may not further stop, detain, investigate, or arrest the person based solely on the person's lawful presence in the United States."). Plaintiffs argue that Arizona law creates no distinctions between individuals presumed to have lawful status and those for whom further inquiry may be needed, but Arizona has no provisions for either status that limit detention to reasonable times permitted by law. Instead, unlike Arizona, South Carolina provides express protection for both those persons whom meet presumptive lawful status (immediate release) and those who do not have such status (detention limited to "reasonable amount of time allowed by law").

Accordingly, the Defendants respectfully request that this request for certification be denied at this time with the same reservation of rights noted above.

5

**Lowcountry's Back-up Request for Reconsideration of an Injunction of §7 Should be Rejected**

Lowcountry argues that Section 7 regarding transfer of custody of State prisoners to Federal facilities should be enjoined if this Court decides to lift the injunction of §6. This request for an injunction as to a section not now subject to an injunction goes beyond the scope of the limited remand of this case for any needed modification of the District Court's Order due to *Arizona*. Nothing in *Arizona* calls for an injunction of the provisions of §7. Moreover, Lowcountry's argument relies on the same argument they make against §6, which is that it allows for transfers to Federal custody without Federal consent. Again, nothing in either §6 or §7 supports a reasonable argument that unlawfully present immigrants may be dropped off at Federal facilities without the consent of Federal authorities.

II

**THE PRELIMINARY INJUNCTIONS SHOULD BE LIFTED
AS TO SECTIONS 4, 5, AND 6(B)(2)**

The Defendants stand by their arguments regarding these sections set forth in their opening memorandum on limited remand and their memorandum in opposition to preliminary injunction. They reserve the right to address these sections further upon reply to Plaintiffs' responses to the Defendants' opening memoranda.

# III

## FEDERALISM WARRANTS DISSOLVING THE INJUNCTION

Plaintiffs have not yet addressed this argument set forth in the Defendants' opening memorandum on limited remand. The Defendants reassert those grounds for lifting the injunction. Federalism provides a strong basis for lifting the injunction as to all affected parts of Act 69. As noted in Defendants' earlier memorandum, should this Court wish to hear these arguments in detail, we will, upon the Court's request, gladly prepare memoranda and argue them further.

## CONCLUSION

The Defendants State of South Carolina, Governor Haley and Attorney General Wilson respectfully request that this Court lift the preliminary injunction in this case. The Defendants reserve all claims and defenses that they have in this case including their arguments made in opposition to the motions for preliminary injunctions and on appeal[6].

Respectfully submitted,

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Assistant Deputy Attorney General
Federal ID No. 285
Email: AGRCOOK@SCAG.GOV

[Signature block continued next page]

---

[6] Because the orders of the Fourth Circuit Court and this Court appear to limit the parties to arguing the effect of *Arizona* on this case, the Defendants have not argued other issues in this. Should this Court want to hear any arguments on other issues, upon the Court's request, the Defendants will gladly prepare memoranda for the Court on the issues and argue them in Court. Unless the Court so orders, the Defendants limit their arguments to the *Arizona* case and reserve their rights on appeal as set forth above.

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Assistant Deputy Attorney General
Federal ID No. 3908
Email: AGESMITH@SCAG.GOV
Post Office Box 11549
Columbia, South Carolina 29211
Phone: (803) 734-3680
Fax: (803) 734-3677

October 10, 2012 Counsel for Defendants Governor,
Attorney General and State